UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission, et al. <br>       Plaintiff <br><br> and Richard Rascher, <br>       Plaintiff-Intervenor, <br><br> v. <br><br> S&C Electric Company <br><br>       Defendant. | Case No.: 1:17−cv−06753 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Maria Valdez |

**PLAINTIFF EEOC'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
ADA CLAIMS FROM PLAINTIFFS AMENDED COMPLAINT**

    Defendant's Motion to Dismiss, Dkt. 29, appears to address the case Defendant *wishes* it confronted, rather than the case that is actually before this Court. Defendant presents the Court with numerous decisions that stand for the proposition that an employee who *seeks* a multi-month leave as an accommodation is not a qualified individual under the Americans with Disabilities Act ("ADA"). But this is a case about an employee who, having received return-to-work clearance from his doctor, sought to return to work and was instead terminated. Plaintiffs have not pled that Defendant discriminated against Richard Rascher, the aggrieved individual in this case, because Defendant refused to extend to him an additional multi-month leave of absence beyond the leave the company normally provided, because those are not the facts of this case. Rather, consistent with the facts, Plaintiffs plead that "When Defendant Employer discharged Rascher, he was able to return to work and could perform the essential functions of his

1

position." (Dkt. 26, p. 5). Defendant has provided *no* case law to support its proposition that a plaintiff with these allegations has "pled himself out of court."

I.   **Background**

**In its Amended Complaint,** EEOC pled in two paragraphs that Rascher was qualified to work. Paragraph 13(c) states: "In early and mid-August 2015, Rascher contacted Defendant Employer to return to work. Upon Employer's request, he provided Employer with his medical providers' authorizations to return to work."[1] (Dkt. 26, p. 4). Paragraph 13(e) alleges that "When Defendant Employer discharged Rascher, he was able to return to work and could perform the essential functions of his position."

Defendant has included Rascher's Charge of Discrimination in its submission. In his Charge Rascher alleges that when he attempted to return to work, he was asked to retire. When he declined the invitation to retire, Defendant sent Rascher for a medical exam, and Rascher provided Defendant with "his doctors' authorizations to return to work." Defendant again asked Rascher to retire, and when he again declined, he was terminated. Dkt. 28, p. 8. It is undisputed that when Rascher attempted to return to work, he was not told that he could not come back because he had been replaced, or that he had violated Defendant's attendance policies. Defendant's reaction to his attempt to return to work was to seek medical confirmation that he was fit for duty, and despite receiving multiple releases to return to work from Rascher's physicians, it terminated him.

II.   **Rascher Meets the Seventh Circuit's Definition of a "Qualified Individual" Under the ADA.**

The caselaw that Defendant relies on, including cases decided in the last year, establish that Rascher is "a qualified individual with a disability" as defined by the ADA. "A 'qualified individual' with a disability is a person who, 'with or without reasonable accommodation, can

---

[1] Although Defendant disputes that Rascher provided any medical authorizations to return to work (Dkt. 29, n.4), of course, the allegations in EEOC's Amended Complaint must be accepted as true on a motion to dismiss.

perform the essential functions of the employment position.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017).[2] Plaintiffs have done more than simply plead a conclusion, that Rasher was able to return to work and perform the essential functions of his job, they have pled facts that support that conclusion: "In early and mid-August 2015, Rascher contacted Defendant Employer to return to work. Upon Employer's request, he provided Employer with his medical providers' authorizations to return to work." Dkt. 26, p. 4.

The caselaw upon which Defendant relies also establishes that when assessing an individual's ability to "perform the essential functions" of the job, courts should look to the plaintiff's capacity at the moment the decision to terminate was made. *Hamm v. Exxon Mobil Corp.*, 223 F. App'x 506, 508 (7th Cir. 2007) ("Whether an individual is a qualified individual with a disability is determined as of the time of the employment decision"); *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996) (*citing* C.F.R. app. § 1630.2(m)). At the time that Defendant made the decision to terminate him, September 2015, he had already been cleared to return to work by

---

[2] See also, 42 U.S.C.A. § 12111(8): "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"; *Golden v. Indianapolis Hous. Agency*, 698 F. App'x 835, 837 (7th Cir. 2017) (an "otherwise qualified individual," is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires"); *Hamm v. Exxon Mobil Corp.,* 223 F. App'x 506, 508 (7th Cir. 2007) ("The employment provisions of the ADA only protect qualified individuals with disabilities, those individuals who, with or without a reasonable accommodation, can perform the essential functions of their position"); *Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001) (to determine if a plaintiff is a qualified individual, courts must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation").

his physician. Rascher was not seeking an accommodation from Defendant, he was simply attempting to return to his duties. As such, he was clearly a qualified individual.

**III.     Cases Holding that Employees Who Need Extended Leave Are Not Qualified Are Easily Distinguishable and Not Applicable.**

Defendant notes that there are several Seventh Circuit cases that stand for the proposition that "employees on multi-month leaves of absences are not qualified individuals with a disability under the ADA." Dkt. 29, p. 6. But defendant conveniently ignores that Defendant did not attempt to terminate Rascher while he was on leave and unable to work. Rather, Defendant informed Rascher that he would need to return to work by August 29, 2015 in order to keep his job. Rascher presented clearance for work prior to August 29, 2015, as directed by his employer. But rather than return him, Defendant terminated him. The controlling cases to which Defendant cites hold that an employee *who seeks an accommodation of not working* is not qualified because s/he has not demonstrated that s/he is able to work with or without a *reasonable* accommodation.

The two most recent Seventh Circuit cases are illustrative. The holding of *Severson v. Heartland Woodcraft, Inc.* is that "[a] multimonth leave of absence is beyond the scope of a reasonable accommodation under the ADA." 872 F.3d 476, 479 (7th Cir. 2017). In *Severson,* the plaintiff was off work due to a back injury. At the point of exhausting his 12 weeks of leave under the FMLA, he requested "at least" two more months to recover from a planned surgery. *Id.* In *Severnson,* the parties agreed that the plaintiff was unable to perform an essential function of his job at the time he was fired. *Id.* at 480. Judge Rovner, in her concurrence in *Golden v. Indianapolis Hous. Agency,* 698 F. App'x 835, 837 (7th Cir. 2017) stated that *Severson* "declared—without any support from the text of the Americans with Disabilities Act—a per se rule that 'a long term leave of absence cannot be a reasonable accommodation.'" Fortunately for

4

Rascher, he was not seeking "long term leave," or any accommodation, at the time that Defendant terminated him. Rather, he was seeking to return to work.

Like *Severson,* at issue in *Golden* was a prolonged leave of absence which was followed by a request for additional, open-ended, leave. "After Golden took sixteen weeks of unpaid medical leave, her doctor still could not say when she would be able to return to work, so IHA terminated her." *Id.* at 835. In contrast, when Rascher attempted to return to work at S and C Electric in August of 2015, his doctor knew when he would be fit to return to work: immediately. The other cases cited by Defendant are equally inapposite and so unavailing:

- ***Byrne v. Avon Prod., Inc.*,** 328 F.3d 379 (7th Cir. 2003), cited at Dkt. 29, pp. 1, 8, 12. In *Byrne*, unknown to the employer, plaintiff was experiencing severe depression. He was terminated for failing to appear at a meeting and sleeping on the job. The district court granted summary judgment to Avon because the ADA does not excuse misconduct on the job. *Id.* at 380. For approximately two months after his termination for misconduct, Byrne was unable to work. *Id.* "Byrne did not want a few days off or a part-time position; his only proposed accommodation is not working for an extended time, which as far as the ADA is concerned confesses that he was not a 'qualified individual' in late 1998." *Id.* 381. Unlike the plaintiff in *Byrne*, at the time of his termination, Rascher was not seeking extended leave or any other accommodation.

- ***Waggoner v. Olin Corp.*,** 169 F.3d 481 (7th Cir. 1999), Dkt. 29, pp. 6-7. Waggoner, in addition to having two multi-month leaves of absence during an approximately 20-month period, missed work or was absent on 40 of the days during the 14 months that she was not on leave. Plaintiff was terminated for excessive absenteeism. *Id.* at 482. The court held, "In most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability." *Id.* at 484. The court also ruled that, "in

5

evaluating any requested accommodation, the issue will be whether the hardship imposed on the employer by it is 'undue.'" *Id.* at 485. Unlike the plaintiff in *Waggoner*, Rascher was not terminated for "erratic, unexplained absences," nor did he request an accommodation.

- *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1001 (7th Cir. 1998), Dkt. 19, pp. 3, 6-8, 12-13. After several extended leaves of absence over a multi-year period, *and* the provision of multiple accommodations, the plaintiff was terminated on October 7, 1994. During litigation, the plaintiff contended that he could have returned to work more than 12 weeks *after being terminated* if, in addition to the extra leave, he was provided with yet more physical accommodations – which he never requested prior to the litigation. *Id*. Unlike Nowak, after a single extended leave of absence, Rascher was released to work and requested to return to work without accommodation.

- *Weigel v. Target Stores*, 122 F.3d 461, 468 (7th Cir. 1997), Dkt 29, p. 3. Plaintiff was off work for 150 days under Target's paid medical leave policy. At the expiration of leave she was given a choice of returning to work, going on unpaid leave, or resigning. After a short, unilateral extension of her leave, she attempted to return to work. However, she quickly realized that she could not work and requested additional leave. In response, she was terminated under Target's policy of requiring that employees work for 14 consecutive days after returning from disability leave in order to receive "extended benefits." *Id.* at 463. Plaintiff's claims were denied due to multiple statements made by herself and her physician that she was "totally disabled" and "wholly unable to work." *Id.* 468. Rascher, in contrast, was released to work by his physician, and, as in a motion to dismiss, all facts pled must be treated as true, he was capable of working.

- *Hamm v. Exxon Mobil Corp.,* 223 F. App'x 506, 507 (7th Cir. 2007), Dkt 29, pp. 2, 3, 6, 8, 9. In this case, after returning to work following treatment for cancer, an evaluation revealed that the plaintiff was no longer capable of performing his past position due to failing eyesight.

Defendant then transferred Hamm into the only available position for which he was qualified. Hamm did not believe he could perform the new position, and ultimately, his physician asked for another month of time off work. *Id.* In response, Exxon put Hamm back on FMLA leave, and notified him that if he did not return to work with a release from his doctor approximately 2 weeks hence he would be terminated, as he had exhausted all of his leave. He failed to return with a doctor's release and was terminated. *Id.* Unlike Hamm, Rascher complied with his employer's request and arrived at work with a release from his doctor. He did not seek additional leave.

- ***Perkins v. Ameritech Corp.,*** 161 F. App'x 578, 580 (7th Cir. 2006), Dkt. 29, p. 6, 13. Here, plaintiff had a history of attendance violations, had multi-month leaves in three of the five years prior to her leaving employment, and was not at work "most of the time" during the year of her departure. Eventually she was "suspended pending dismissal" for arriving at work late. To avoid termination, she entered into a last chance agreement that provided for her termination in the event of another attendance violation. She then resigned because she believed that the agreement was too onerous. *Id.* In the instant case, Rascher did not resign; he was terminated after he tried to return to work with a release from his doctor. Unlike Perkins, Rascher was not under threat of termination for attendance violations.

- ***Oestringer v. Dillard Store Servs., Inc.,*** 92 F. App'x 339, 340–41 (7th Cir. 2004), Dkt. 29, pp. 6, 9. Plaintiff was a new employee, entitled to only one week of "emergency" leave. Plaintiff injured her ankle at work and was out for several weeks, with her doctor repeatedly extending her return-to-work date. Plaintiff's last doctor's note released her to return to work on July 18, but she failed to do so. She was contacted by the defendant, reminded that she was only entitled to one week of leave, which she had exceeded, and that she needed to appear for work as

7

scheduled. She was told that if she did not appear for her shift she would be terminated. Plaintiff indicated that she still could not work, and when she failed to appear for her shift she was terminated. *Id.* In contrast, Rascher sought a return to work before the expiration of his leave and was fit for duty.

- *Amadio v. Ford Motor Co.,* 238 F.3d 919, 921 (7th Cir. 2001), Dkt. 29, p. 7. Plaintiff took approximately 70 weeks of sick leave. At the expiration of his leave, the plaintiff was required to take one of a variety of actions allowed for under the collective bargaining agreement. Failure to comply with the requirements of the leave policy at Ford could result in the termination of an employee. Ultimately, Amadio was terminated for failing to comply with the requirements of the policy. *Id.* at 921-922. Despite his failure to comply with the requirements of the leave policy, the plaintiff claimed that he would have been able to return to work if Ford had granted him one additional week of leave. Noting that "Amadio took 23 medical leaves during his last three years of employment (totaling approximately eighteen months of absence) and was disciplined several times in connection with his absenteeism," the court concluded that it was reasonable for Ford to believe that extending Amadio an additional week of leave would be an "ineffectual gesture." *Id.* at 927-928. Unlike Amadio, Rascher did not request additional time off work; he came to work before the expiration of his leave, and when requested, presented a release to return to work from his doctor.

- *Corder v. Lucent Techs. Inc.,* 162 F.3d 924, 926 (7th Cir. 1998), Dkt 29, pp. 7, 13. Plaintiff received 43 weeks of paid sick leave in 1991. In 1992, she took another 19 weeks off and "failed to complete a single workweek." *Id.* In 1993, she was provided with various accommodations in an attempt to allow her to attend work more regularly. *Id.* Despite being denied leave for the 1993 holiday season, Corder went on leave from mid-November through mid-January. In 1994,

at a new location, the plaintiff missed 49% of her shifts. Plaintiff repeatedly failed to appear at fitness-for-duty exams requested by her employer. When she did finally meet with her employer, she requested, on an ongoing basis, brief frequent breaks during the day, early dismissal on Fridays, and "the ability to take an 'unpredictable' amount of time off" when necessary. *Id.* at 926-927. Defendant did not believe it could accommodate these requests, but did offer a part-time schedule or transfer to a larger facility where her erratic attendance could be more easily absorbed. Corder rejected these proposed accommodations. She then failed to cooperate with yet another fitness-for-duty exam and was fired for this infraction. *Id.* at 927. Rascher is clearly different than Corder – he cooperated with his employer's requests for medical verification of his fitness for duty, and he did not make any request for future leave, let alone the right to take unlimited "unpredictable" leave.

### IV.    Plaintiffs Have Properly Pled That Rascher Was A Qualified Individual With A Disability.

Defendant, in Section II of its Memorandum, Dkt. 29, pp. 9-13, argues that EEOC has failed to properly plead an ADA claim under the *Iqbal* and *Twombly* standards. Defendant, however, attempts to support this claim by simply reasserting the argument it made in Section I, that the Seventh Circuit has, supposedly, ruled that an individual who has taken extended medical leave has no protections under the ADA. As argued above, none of the cases Defendant relies on are applicable to the case at bar.

At least one Northern District of Illinois court has rejected a defendant's attempt to equate past leave with cases like *Byrne* that seem to hold that extended leave strips an individual of the protections of the ADA. "What materially distinguishes Plaintiff's claim from other cases is that he did not require a prospective period of absence at the time of his termination in order to be accommodated." *Owens v. Quality Hyundai*, No. 05 C 4325, 2007 WL 495248, at *3 (N.D.

9

Ill. Feb. 15, 2007). Since Rascher did not need, and did not seek, prospective leave, cases like *Byrne, Severnson* and *Golden* are simply not applicable.

**V.      Conclusion**

For all the reasons stated above, Plaintiff EEOC asks that this Court deny Defendant's motion, and for any additional relief the Court deems appropriate.

        Respectfully submitted,

        s/ Ethan M. M. Cohen
        Ethan M. M. Cohen
        Trial Attorney

        Ethan M. M. Cohen
        United States Equal Employment
            Opportunity Commission
        500 West Madison, Room 2000
        Chicago, Illinois 60661
        (312) 869-8104
        ethan.cohen@eeoc.gov
        Illinois ARDC #6206781