**EXHIBIT 1**

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 17-cv-06753 ) |
| S&C ELECTRIC CO., | ) ) |
| Defendant. | ) |

The deposition of RAJEEV KHANNA, M.D., called by the Plaintiff for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Bridget L. Stone, Certified Shorthand Reporter, at 2625 West Harrison Street, Bellwood, Illinois, commencing at 9:30 a.m. on the 5th day of March, A.D., 2019.

Page 2

```
 1   APPEARANCES:

 2        EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
          MR. BRADLEY FIORITO
 3        MS. JOETTE DORAN
          500 West Madison Street
 4        Suite 2000
          Chicago, Illinois 60661
 5        Phone:  (312) 869-8000

 6             On behalf of the Plaintiff;

 7        FOX, SWIBEL, LEVIN & CARROLL, LLP
          MR. STEVEN L. BRENNEMAN
 8        200 West Madison Street
          Suite 3000
 9        Chicago, Illinois 60606
          Phone:  (312) 224-1200
10        E-Mail:  sbrenneman@foxswibel.com

11             On behalf of the Defendant.

12   ALSO PRESENT:

13        Ms. Donna Baggett, S&C Electric

14
                      *   *   *   *   *   *
15

16

17

18

19

20

21

22

23

24
```

```
 1                    I N D E X
 2   WITNESS                                        PAGE
 3   RAJEEV KHANNA, M.D.
 4
 5       Examination By Ms. Doran..................   4
 6       Examination By Mr. Fiorito................  86
 7       Examination By Mr. Brennean...............  91
 8       Further Examination By Ms. Doran..........  95
 9       Further Examination By Mr. Fiorito........  97
10
11
12                    E X H I B I T S
13   KHANNA DEPOSITION EXHIBIT                      PAGE
14
15       Exhibit 1 ................................   6
16       Exhibit 2 ................................  17
17       Exhibit 3 ................................  57
18       Exhibit 4 ................................  59
19       Exhibit 5 ................................  71
20
21
22
23
24
```

Page 4

1                    (Witness sworn.)
2    WHEREUPON:
3                    RAJEEV KHANNA, M.D.,
4    called as a witness herein, having been first duly
5    sworn, was examined and testified as follows:
6                         EXAMINATION
7    BY MS. DORAN:
8        Q.   Will you please state your full name for the
9    record and spell your last name.
10       A.   Rajeev Khanna, K H A N N A.
11       MS. DORAN:  Okay.  Let the record reflect that this
12   is the deposition of Dr. Khanna taken pursuant to notice
13   on today's date by agreement of the parties.
14   BY MS. DORAN:
15       Q.   And, Doctor, I'm going to be asking you a
16   series of questions today.  If at any time you don't
17   understand my question, please let me know.  If you
18   don't do so, I'm going to assume that you've understood
19   my question and that you're answering me in response.
20   Okay?
21       A.   Okay.
22       Q.   All right.  Please have all your answers
23   verbal so that the court reporter can take down your
24   answers as opposed to a nod of the head or a gesture of

Page 16

1  with respect to any findings she made as a nurse with
2  respect to his ability to return to work?
3      A.   I don't recall any specific conversation.
4      Q.   Did she advise you in terms of if he had any
5  physical limitations before you met with him?
6      A.   Again, I don't recall a specific conversation
7  with Kathleen regarding Richard Rascher, per se.
8      Q.   With regard to any patient that you would
9  review for S&C, did you first want to get an
10 understanding of why you would be seeing that
11 individual?
12     A.   I've seen tens of thousands of patients and
13 I'm not used to getting a briefing on every patient, so
14 my recollection is I had several people to see that day
15 and I would see one at a time, get information from
16 them.  You know, if there was something Kathleen
17 mentioned to me, it was more in passing about the next
18 patient.
19          I don't recall a specific conversation.  I'm
20 not used to getting briefings on patients in practice.
21 I'm used to basically seeing whoever is on my schedule
22 one after the other.
23     Q.   Did you review any medical records of
24 Mr. Rascher before you saw him?

Page 17

1      A.    To my recollection, I did not.
2      Q.    Did you request any?
3      A.    Well, I do recall speaking to Mr. Rascher and
4 I have reviewed his note from that date.
5         So, again, when a patient comes to me, if they
6 provide me information, I make note of that.  If they
7 don't provide me any information, then I have to make a
8 determination at that time based on the information
9 available to me.
10     Q.    Do you rely on the patient to provide you the
11 information?
12     A.    In general, yes.
13     Q.    In this particular situation, do you know if
14 Mr. Rascher was instructed by S&C Electric to bring any
15 medical records with him?
16     A.    I don't know what he was instructed to do.
17     Q.    Did you request any from him in particular?
18     A.    In particular, not that I can recall.
19     MS. DORAN:  We'll mark this as Khanna Deposition
20 Exhibit No. 2.
21               (Khanna Deposition Exhibit No. 2
22                marked as requested.)
23 BY MS. DORAN:
24     Q.    Okay.  Doctor, if you'll take a look at what

Page 38

1     Q. And if you were going to obtain additional
2 medical information, could you have contacted those
3 doctors?
4     A. No, that's not part of my job doing an eval
5 for fitness for duty.
6     Q. And why not?
7     A. When you're dealing with 75,000 patients a
8 year, it's the patients' responsibility to provide you
9 the records, not for my responsibility to track down
10 their records.
11     Q. With respect to this particular visit with
12 Mr. Rascher, did you request Ms. Clawson to provide you
13 with the medical records of either one of the doctors
14 that he mentioned?
15     A. Again, in general, at the end of seeing these
16 individuals, we would have reviewed all of the notes
17 that I had made and --
18     (Cell phone interruption.)
19     MS. DORAN: Sorry, please continue. I apologize.
20 BY THE WITNESS:
21     A. And, you know, my general guidelines would
22 have been, well, I don't think he can work now but if
23 they do get records or something changes, she could let
24 me know.

Page 95

1  that time?
2      A.   Yes, that's correct.
3      MR. FIORITO:  I have no further questions.
4      MS. DORAN:  Doctor, just to clarify.
5                   FURTHER EXAMINATION
6  BY MS. DORAN:
7      Q.   Your opinion that he was not functionally safe
8  to return to work at that time, you were referring to
9  full time; is that correct?
10     A.   That's what I put down in my notes.
11     Q.   Okay.  Is it also correct that that opinion
12 would be further revised based upon your review of his
13 medical records?
14     MR. BRENNEMAN:  Objection to the form.
15 BY THE WITNESS:
16     A.   If I had records that I found some information
17 in there that required that to be changed, I would.
18     Q.   But you were never provided with those medical
19 records of Mr. Rascher; is that correct?
20     A.   That is correct.
21     Q.   And -- Strike that.
22          Your -- your opinion with respect -- as of
23 August 31st, 2015, that he could not safely return to
24 work full time was not based upon any objective