IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, and ESTATE OF RICHARD RASCHER, Plaintiff-Intervenor,<br><br>v.<br><br>S&C ELECTRIC COMPANY,<br><br>Defendant. | Case No. 17-cv-6753<br><br>Judge Franklin U. Valderrama |

### DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ENTER CONSENT DECREE

Defendant S&C Electric Company ("Defendant"), by and through its attorneys, hereby submits this motion to enforce the global settlement agreement ("Settlement") reached by, between, and among Plaintiff-Intervenor Estate of Richard Rascher (the "Estate"), Plaintiff Equal Employment Opportunity Commission ("EEOC") (collectively, "Plaintiffs"), and Defendant (collectively, the "Parties") on August 9, 2021 and to enter the attached consent decree ("Consent Decree") which is consistent with, and incorporates the terms of, the Parties' Settlement. (The Consent Decree is attached hereto as Exhibit A.) In support of this motion, Defendant states as follows:

**I.    BACKGROUND**

1. On July 14, 2021, this case was set for trial. Dkt. 156.

2. On August 9, 2021 at 11:30 a.m., the Parties appeared before the Court for a status hearing to address certain pre-trial matters ("Status Hearing"). Dkt. 182. At this Status Hearing, the Court inquired as to the Parties' settlement positions. Upon the Parties' agreement that further settlement discussions would be productive and might obviate the need for trial, the Court held an

approximately five and one-half hour settlement conference ("Settlement Conference") as part of the Status Hearing. *See id.*

3. The Settlement Conference resulted in the Parties, with the Court's assistance, reaching a global agreement on *all but one* of the material settlement terms. Specifically, there remained disagreement as to the language of Paragraph 5 of the EEOC's most recent proposed consent decree provided on September 24, 2020 in connection with the settlement conference held by Magistrate Judge Valdez ("Proposed Consent Decree"). (A true and accurate copy of the Proposed Consent Decree is attached hereto as Exhibit B.[1]) Paragraph 5 sets forth the scope of the injunction vis-à-vis retaliation.

4. Shortly after the Settlement Conference concluded, Defendant proposed a revised version of Paragraph 5 of the EEOC's most recent Proposed Consent Decree. After minor modifications were exchanged by the Parties, the Settlement Agreement was reached.

5. Thereafter, all Parties confirmed agreement to the global Settlement. Upon this agreement, the Parties further agreed to inform the Court via email that the case had been resolved in principle.

6. As set forth more fully below, the Court should enforce the Settlement and enter the Consent Decree.

---

[1] In addition, a true and accurate copy of the EEOC's September 24, 2020 email transmitting the Proposed Consent Decree to Magistrate Judge Valdez is attached hereto as Exhibit C.

## II.     LEGAL STANDARD[2]

7. "A settlement agreement is a contract that is enforceable under ordinary state-law[3] contract principles." *Ortiz-Quinones v. Cook Cty., Illinois*, 744 F. App'x 962, 964 (7th Cir. 2018) (enforcing settlement agreement) (citing *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002) (affirming finding that parties reached oral settlement); *Holmes v. Godinez*, 991 F.3d 775, 784 (7th Cir. 2021) (enforcing settlement and holding on motion to enforce that parties' agreement, not ADA, is source of court's authority).[4]

8. Oral settlement agreements are enforceable where there exists "an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (affirming enforcement of oral settlement); *Lynch*, 279 F.3d at 490 (collecting cases).

9. Oral settlements arrived at through discussions in a settlement conference are valid. *Lynch,* 279 F.3d at 490. In addition, a judge's recollection of the events that take place in a settlement conference is binding. *See id.* ("if the [] judge's recollection of the November 23 settlement conference is correct, the case has indeed been settled"). Moreover, oral settlement

---

[2] As set forth below, the motion should be analyzed under contract principles. While the case involves a consent decree, the Consent Decree has not yet been entered, and none of the Parties is seeking to enforce a provision of same. *See, e.g., E.E.O.C. v. Regal-Beloit Corp.*, No. 06-C-568-S, 2007 WL 5614093, at *2 (W.D. Wis. May 1, 2007) (granting EEOC's motion to enforce settlement and enter consent decree); *see also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (consent decrees are enforceable as "a judicial decree that is subject to the rules generally applicable to other judgments and decrees"). In any case, the result would be the same even if the Court treated the Settlement as a consent decree. *See Frew*, 540 U.S. at 437 ("Consent decrees have elements of [] contracts…and "embod[y] an agreement of the parties").

[3] If the Court analyzes this motion under federal law, the result would be the same. *See, e.g., Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (on employer's motion to enforce oral settlement agreement, the "judge did not make a choice, noting that Illinois and federal law do not differ significantly with regard to the formulation and enforcement of oral settlement agreements. This observation is correct as far as it goes.") (quotations omitted).

[4] In employment discrimination cases, the Seventh Circuit requires "that an employee's settlement be 'knowing and voluntary' as a matter of federal law." *Ortiz-Quinones*, 744 F. App'x at 964 (Title VII). In this case, the employee is deceased, and the Estate is represented by counsel. Thus, the "knowing and voluntary" requirement is met. *Id.* ("If an employee who is represented by counsel of her choice settles a lawsuit, then the settlement agreement is presumed to be knowing and voluntary.").

agreements that take place off the record are valid. *Id.* at 491 (disputes may be solved in settlement conferences off the record); *see also* 28 U.S.C. § 753(b) (Court Report's Act, which specifies what proceedings must be on the record, does not require that settlement conferences be conducted on the record).

### III. ARGUMENT

#### A. The Parties Agreed to the Court Holding a Settlement Conference

10. At the opening of the Status Hearing, the Court asked the Parties to provide their respective settlement positions, which the Parties summarized.

11. Thereafter, counsel for the EEOC, Mr. Cohen, stated that the EEOC remained interested in settlement and had some flexibility to further negotiate the terms of the Proposed Consent Decree. Upon learning the EEOC's position, Defendant agreed to discuss settlement. The Estate also stated its agreement to engage in settlement negotiations.

12. With the Parties' consent, the Court proceeded to hold the Settlement Conference.

13. To be fully prepared to meaningfully engage in the Settlement Conference, Mr. Cohen requested a brief recess to collect the EEOC's notes and documents related to the Parties' prior settlement efforts. The Court agreed and went into a brief recess.

#### B. Defendant's Position

14. Defendant sought concessions regarding the following material terms that were preventing settlement:

  a. Narrowing the scope of the injunction such that it was tailored to the facts and allegations applicable to this case. *See Frew,* 540 U.S. 431, 437 ("a federal consent decree… must come within the general scope of the case made by the pleadings; and must further the objectives of the law upon which the complaint

was based."). Specifically, Defendant sought the following concessions to settle the case:

   i. Scope of proposed injunction narrowed to enjoin Defendant from discriminating on the basis of disability under the ADA by terminating from employment a qualified individual with a disability rather than agreeing to said individual's request to return after the expiration of the maximum medical leave of absence. *See* Ex. B, ¶ 4 (containing relevant language to be revised).

   ii. Scope of proposed injunction narrowed to enjoin retaliation exclusively as it relates to compliance with the consent decree (i.e., because Plaintiffs do not allege retaliation in this case). *See id.*, ¶ 5 (containing language to be revised).

b. Reduce the monetary amount to be paid to the Estate. *See, id.*, ¶ 6 (monetary provision).

c. Notice of the consent decree ("Notice") to be posted exclusively in Defendant's Human Resources office at its Chicago location (i.e., the geographic locus of the allegations in this case and the primary physical location at which decisions regarding returning employees to work are made by Defendant and conveyed to employees). *See id.*, ¶ 7.

d. Scope of the proposed recordkeeping and reporting requirements narrowed exclusively to instances in which an employee (i) seeks to return to work from leave of absence; (ii) Defendant declines to accept said employee's request to return to work and instead separates the employee because the maximum leave of absence under Defendant's policy is exhausted; and (iii) said employee registers a

disagreement with Defendant's decision (i.e., the discrimination alleged in this case). *See* Ex. B, ¶ 9 (containing relevant language to be revised).

e. EEOC involvement in Defendant's ADA training to be limited exclusively to approval of the identity of the outside/independent trainer(s) selected by Defendant. *See* Ex. B, ¶ 13.

f. Term of the consent decree to be reduced. *See* Ex. B, ¶ 17.

### C. The Settlement Conference Negotiations

15. At approximately 12:30 p.m., the Court held a private caucus with Plaintiffs to discuss their positions.

16. At approximately 1:20 p.m., the Court held a private caucus with Defendant and explained the following:

a. The EEOC was willing to agree to Defendant's position regarding the posting of Notice exclusively in Defendant's Human Resources office at its Chicago location provided this was the location at which decisions regarding returning employees to work are made by Defendant and conveyed to employees. Defendant confirmed to the Court that this was the location where such decisions are made and conveyed.[5]

b. The EEOC was willing to agree to Defendant's position regarding the training requirement of the consent decree as stated *supra* at ¶ 14(e).

c. The EEOC was willing to agree to an 18-month consent decree (with reporting to take place via Excel spreadsheet or letter at six (6) months and fifteen (15) months).

---

[5] For full context, Defendant explained that Defendant also provides notice to employees electronically through its intranet.

6

4217665 v1 -

    d. The EEOC sought to have the injunction, including recordkeeping requirements, include within its scope all instances in which an employee seeks to return to work and Defendant denies said employee's request.

17. Defendant informed the Court of its agreement to ¶ 16(a), (b), and (c) above, but that it would not agree to any injunctive relief except as described in Paragraph 14(a) above.

18. At approximately 1:42 p.m., the Court returned to confer independently with Plaintiffs.

19. At approximately 2:12 p.m., the Court returned to confer independently with Defendant. The Court stated its belief that agreement to the non-monetary terms of a consent decree was essentially in place, and based upon this progress, began to focus the Settlement Conference on the monetary settlement amount.

20. By approximately 3:25 p.m., after exchanging offers and obtaining client consent, a monetary amount, to be paid to the Estate, was agreed to as part of a potential consent decree, provided that the other consent decree terms were finally agreed upon. Defendant also agreed that the private release agreement between Defendant and the Estate would be modified as necessary to exclude terms that have become moot as a result of Mr. Rascher's passing.

21. Thereafter, the Court brought all Parties back into a conference to confirm the material terms agreed upon by all Parties. In summary, the agreed upon material terms were as follows[6]:

    a. The scope of the injunction to be set forth in a consent decree, including recordkeeping and reporting obligations therein, was to be tailored to address scenarios in which (i) an employee requests to return to work from a medical leave of absence; (ii) such request is denied by Defendant; and (iii) instead of being returned

---

[6] The terms which were not, and have not been, in dispute since the settlement conferences before the magistrate court would remain materially same.

    to work, the employee is terminated; and (iv) such employee registers a disagreement with Defendant's decision.

b. The length of the consent decree was to be eighteen (18) months (with reporting to take place via Excel spreadsheet or letter at six (6) months and fifteen (15) months)

c. As to ADA training requirements, Defendant would be required to provide the EEOC the name of its selected outside/independent trainer(s), after which the EEOC would have the right to reject Defendant's selection. In the event the EEOC were to reject Defendant's selection, Defendant would then propose another outside/independent trainer(s) (with the EEOC again having the right to reject Defendant's proposed outside/independent trainer(s)).

d. The Notice was to be posted in the Human Resources office of Defendant's Chicago location.

e. The consent decree was to provide for a monetary settlement in the amount of $315,000 which was to be paid to the Estate.

f. The private release agreement between Defendant and the Estate was to be modified to exclude any portions rendered moot by Mr. Rascher's passing.

22. The Parties agreed to all material terms set forth in Paragraph 21 above.

23. However, Defendant requested confirmation from the EEOC that the retaliation injunction language in Paragraph 5 of the Proposed Consent Decree would be narrowed. Defendant restated its long-held position that any broader injunction against retaliation under the ADA would be inappropriate because Plaintiffs have never alleged retaliation in this case. *See Frew,* 540 U.S. 431, 437 (consent decree is dictated by scope of pleadings and must further objectives of law upon which the complaint was based).

24. Although the EEOC agreed with all terms recited by the Court in Paragraph 21 above, it took issue with Defendant's requested modification to the retaliation language of Paragraph 5 of the Proposed Consent Decree. Despite the Court's finding that the scope of the injunction requested by Defendant "aligns with this case perfectly" – and in contravention of the Supreme Court's mandate in *Frew* – Mr. Cohen asserted that the language in Paragraph 5 of the Proposed Consent Decree was the language the EEOC typically uses, and therefore the EEOC would refuse to deviate regardless of the facts of this case.

25. With it having been established on numerous occasions that the only remaining material term to be agreed upon was Defendant's requested revision of the retaliation language in Paragraph 5 of the Proposed Consent Decree – and the Court having deemed Defendant's proposal reasonable and fair – Mr. Cohen indicated he would need to contact the EEOC Regional Attorney for approval to modify this language.

26. The Court encouraged Mr. Cohen to contact the EEOC Regional Attorney and inquired as to whether counsel would recommend modifying Paragraph 5 of the Proposed Consent Decree to comport with Defendant's request. Mr. Cohen stated he would contact the EEOC Regional Attorney but could not commit to recommending the proposed modification.

27. After the Parties took a break to enable Mr. Cohen to confer with the EEOC Regional Attorney, Mr. Cohen informed the Court and the other parties that the EEOC would not agree to Defendant's position regarding Paragraph 5's retaliation language.

28. The Court informed the Parties that it had exhausted settlement efforts, and that it would set the case over for status on the following day for pre-trial rulings. The Court further stated that the deadline to inform potential jurors of settlement had passed, and thus costs could be assessed against the Parties at the Court's discretion should settlement be reached and the jury venire brought in unnecessarily.

### D. The Parties Settle the Case

29. At approximately 6:03 p.m., counsel for Defendant, Mr. Brenneman, emailed to counsel for all Parties a revised Paragraph 5 of the Proposed Consent Decree seeking to address the EEOC's stated concerns. (A true and accurate copy of Mr. Brenneman's 6:03 p.m. email is attached hereto as Exhibit D.) Defendant requested a prompt response in light of the impending trial and in hopes of enabling the Court to inform jurors that they need not appear for COVID-19 testing should the Parties reach settlement.

30. At approximately 6:40 p.m., counsel for Defendant, Mr. Liss, spoke via telephone to counsel for EEOC, Mr. Shultz. Mr. Shultz informed Mr. Liss that Mr. Cohen and additional EEOC attorneys were reviewing Defendant's proposal.

31. At 6:48 p.m., Mr. Cohen, on behalf of the EEOC, sent an email to counsel for all Parties containing a redline of Defendant's proposal for Paragraph 5, to which EEOC stated it would agree. EEOC further stated that it would not agree to pay any jury venire costs assessed by the Court. (A true and accurate copy of Mr. Cohen's 6:48 p.m. email is attached hereto as Exhibit E.)

32. At 7:32 p.m., Mr. Brenneman, on behalf of Defendant, emailed all Parties stating that Defendant agreed to the EEOC's 6:48 p.m. proposal, provided that the Parties agree to change one "the" to "this." (A true and accurate copy of Mr. Brenneman's 7:32 p.m. email is attached hereto as Exhibit F.) This email further stated that Defendant did not accept the EEOC's statement that it would not pay costs assessed by the Court, as all Parties should be prepared to comply with any order issued by the Court on that topic. Finally, the email suggested that the Parties promptly inform the Court's staff that the Parties had reached an agreement in principle.

33. At 7:37 p.m., counsel for the Estate, Ms. Doran, emailed counsel for Defendant voicing agreement that the Parties should inform the Court of the Settlement promptly so as to potentially

avoid the assessment of jury venire costs. (A true and accurate copy of Ms. Doran's 7:37 p.m. email is attached hereto as Exhibit G.).

34. Shortly thereafter, Mr. Brenneman and Mr. Liss, on behalf of Defendant, left a voice message for Mr. Shultz, on behalf of EEOC, to ensure all Parties were in agreement that the Parties should immediately notify the Court of the Settlement.

35. At 7:57 p.m., Mr. Shultz returned Mr. Brenneman and Mr. Liss' voice message. Mr. Brenneman and Mr. Liss requested confirmation of the following:

   a. The EEOC agreed to the revised retaliation language from Paragraph 5 of the Proposed Consent Decree set forth in Mr. Brenneman's 7:32 p.m. email (Exhibit F).

   b. Payment of any potential assessment of costs was not a condition of settlement and that all Parties would pay any such costs in accordance with the Court's direction.

   c. The EEOC agreed that the Parties had reached the Settlement consisting of the material terms agreed upon at the Settlement Conference supplemented by the revised retaliation language in Paragraph 5, and thus would inform the Court immediately of same.

Mr. Shultz confirmed the EEOC's agreement to each of these points.[7] (A true and accurate photograph of Mr. Brenneman's telephone call log displaying the 7:57 p.m. call with Mr. Shultz is attached hereto as Exhibit H.)

36. At no time during these post-Settlement Conference communications did the EEOC raise any terms of the Settlement other than the retaliation language of Paragraph 5 of the Proposed Consent Decree.

---

[7] Mr. Shultz expressly clarified that the EEOC's communication regarding costs assessed by the Court was not a condition of settlement, but rather to avoid any ambiguity surrounding whether the EEOC would agree without court order to pay such costs.

11

37. With all Parties' consent, at 8:14 p.m., Mr. Liss, on behalf of all Parties, informed the Court that the Settlement had been reached. (A true and accurate copy of Mr. Liss' email directed to the Proposed Order Box with a copy to Ms. Charles, Ms. Palmer, and all counsel is attached hereto as Exhibit I.)

38. As stated in Mr. Liss' 8:14 p.m. email (Exhibit I), this matter was fully and finally resolved pursuant to the Settlement.

39. Motions to enforce a settlement agreement and simultaneously enter a consent decree are particularly appropriate in the instant case. *E.E.O.C. v. Regal-Beloit Corp.*, Case No. 06-cv-568-S, 2007 WL 5614093 (W.D. Wis. May 1, 2007) is instructive. In that case, the EEOC and an employer held a settlement conference, after which the EEOC stated it would accept the defendant's offer pursuant to oral discussions – even though additional editing to the written language was required. *Id.* at *1. The parties promptly exchanged proposed revisions, with the EEOC ultimately confirming that the defendant's proposal "looked fine subject to [certain] nits and nats." *Id.* Prior to the parties' execution of the final consent decree, however, the court entered summary judgment in favor of defendant. *Id.* Thereafter, the EEOC moved to enforce the settlement and enter a consent decree. *Id.* The court granted the EEOC's motion – both enforcing the settlement and entering a consent decree – on the basis that an oral settlement agreement was formed the instant the EEOC confirmed its agreement "subject to [certain] nits and nats." *Id.*

40. Notably, in *Regal-Beloit*, Mr. Cohen filed two affidavits on behalf of the EEOC in support of enforcement of the oral settlement agreement and entry of the consent decree. *Regal-Beloit*, Case No. 06-cv-568-S, 2007 WL 5614093 (W.D. Wis. May 1, 2007), ECF Dkt. Nos. 51, 58 (affidavits of Ethan M.M. Cohen filed in conjunction with EEOC's motion to enforce settlement and for entry of consent decree).

41. In light of the foregoing, the Court should enforce the Settlement pursuant to the terms agreed upon at the Settlement Conference supplemented by the retaliation language (i.e., Paragraph 5 of the Consent Decree) stated in Mr. Brenneman's 7:32 p.m. email (Exhibit F).

### E. The EEOC's Post-Settlement Attempt to Undo the Settlement

42. Without further communication among the Parties, at 9:02 p.m., Mr. Cohen emailed the Parties, with a copy to the Court, attempting to revise the terms of the Settlement. Despite Mr. Cohen's knowledge that the Court had already been informed of the Settlement, Mr. Cohen asserted that the EEOC "assume[d] based on [Defendant's] recent message to the Court, Defendant is withdrawing its objection to paragraph 4 of [EEOC's] decree." Mr. Cohen's email also requested Defendant to write the Court if Mr. Cohen's understanding was not correct. (A true and accurate copy of Mr. Cohen's 9:02 p.m. email is attached hereto as Exhibit J.)

43. At 9:35 p.m., Mr. Brenneman responded to Mr. Cohen's email explaining that the Parties had already consummated the Settlement, that Defendant had conferred with Mr. Cohen's co-counsel before informing the Court of the Settlement, and that Mr. Cohen had misstated Defendant's position with regard to paragraph 4 of the decree. (A true and accurate copy of Mr. Brenneman's email is attached hereto as Exhibit K.)

44. At 9:39 p.m., Mr. Cohen emailed the Parties restating that the EEOC's attempt to renegotiate the already-finalized Settlement. (A true and accurate copy of Mr. Cohen's 9:39 p.m. email is attached hereto as Exhibit L.)

45. At 10:09 p.m., Mr. Brenneman responded to Mr. Cohen reiterating that the Parties had already reached an agreement in principle and that Mr. Cohen's position regarding Paragraph 4 was incorrect. (A true and accurate copy of Mr. Brenneman's 10:09 p.m. email is attached hereto as Exhibit M.)

46. At 10:27 p.m., Mr. Cohen replied, again seeking to renegotiate the already-finalized Settlement. (A true and accurate copy of Mr. Cohen's 10:27 p.m. email is attached hereto as Exhibit N.)

47. Because each and every one of the communications subsequent to Mr. Liss' 8:14 p.m. email informing the Court of the Settlement occurred *after* the Settlement was reached, they have no impact on the validity of the Settlement.

    **F.**    **The EEOC Should Pay Attorneys' Fees and Venire Costs Resulting from Its Bad Faith Efforts to Undo the Settlement**

48. The EEOC's feigned ignorance of, and disagreement with, the Settlement terms agreed to at the Settlement Conference – raised hours after the Settlement was consummated – should not be countenanced. The EEOC failed to supply any reason for its sudden attempt to undo the Settlement.

49. The attorneys' fees associated with bringing this motion, as well as the jury venire costs assessed by the Court (Dkt. 186), are a direct result of the EEOC's baseless conduct. Accordingly, EEOC should be required to reimburse Defendant for the attorneys' fees incurred by bringing this motion and the jury venire costs assessed against Defendant. *Rakestraw v. Corp. for Cmty. Hous.*, 2005 WL 2030868, at *1 (N.D. Ind. Aug. 19, 2005) (granting fees incurred on motion to enforce settlement and stating "refusal to abide by the terms of a settlement agreement can constitute bad faith, entitling the wronged party to attorneys' fees"); *see also supra* at ¶ 40 (citing *Regal-Beloit*, Case No. 06-cv-568-S, 2007 WL 5614093 (W.D. Wis. May 1, 2007), ECF Dkt. Nos. 51, 58 (affidavits of Ethan M.M. Cohen in support of motion to enforce settlement and enter consent decree in analogous context).

    WHEREFORE, Defendant respectfully request this Court to (i) enforce the Settlement agreement by, between, and among the Parties; (ii) enter the Consent Decree; (iii) award Defendant attorneys' fees incurred in bringing this motion to be paid by EEOC; (iv) order EEOC to reimburse

14

Defendant for all jury venire costs assessed against it; and (v) any other relief the Court deems just and proper.

|  |  |
|---|---|
| Dated: August 12, 2021 | Respectfully submitted,<br><br>S&C Electric Company<br><br>By: */s/ Steven L. Brenneman*<br>   One of its attorneys |

Steven L. Brenneman (IL ARDC #6190736)
L. Brandon Liss (IL ARDC #6321013)
Fox Swibel Levin & Carroll LLP
200 West Madison Street, Suite 3000
Chicago, IL 60606
Telephone: (312) 224-1200
sbrenneman@foxswibel.com
bliss@foxswibel.com

15

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on August 12, 2021 he caused the foregoing **Plaintiff-Intervenor and Defendant's Joint Motion to Enforce Settlement and Enter Consent Decree** to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ *Steven L. Brenneman*
Steven L. Brenneman

4217665 v1 -