IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
   Plaintiff, and

ESTATE OF RICHARD RASCHER,
   Plaintiff-Intervenor,

  v.

S&C ELECTRIC CO.,
   Defendant.

Case No. 1:17-cv-06753

Judge Valderrama

---

**PLAINTIFF EEOC'S MEMORANDUM IN SUPPORT
OF RESPONSE TO DEFENDANT'S MOTION TO
<u>ENFORCE SETTLEMENT AGREEMENT AND ENTER CONSENT DECREE</u>**

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") and Defendant S&C Electric Company ("SCE") never reached a full and enforceable agreement, in principle or otherwise, on terms to resolve this matter. SCE's motion is a transparent attempt to use the Court to buffalo EEOC into an involuntary settlement agreement, despite the clear fact that the parties never had a meeting of the minds on the terms and never had written agreement and EEOC's trial attorney did not agree to settle, and could not because he lacked the authority to do so. Further, even if there were an agreement, it would be unenforceable under the Statute of Frauds. Although EEOC and SCE have never reached terms on a settlement agreement, EEOC does not argue with Rascher's Motion to Enforce Settlement between Rascher and SCE, Dkt. 185.

1

**Facts**

On Saturday August 7, 2021, the Court scheduled a status hearing to begin Monday, August 9, 2021. Dkt. 176. On August 9, during the status hearing, Judge Valderrama asked the parties to engage in settlement discussions. The parties agreed that such discussions may be fruitful and proceeded to engage in a settlement discussion. The parties discussed terms of settlement between EEOC and SCE and, based solely on representations made by the Court, briefly believed the remaining issues between EEOC and Defendant may have been resolved[1]. Rascher and SCE then discussed the parameters of a monetary settlement and reached an agreement on those terms. Then, Judge Valderrama recited terms on which the parties would agree to a settlement:

> [T]he length of the consent decree was agreed to, and that was 18 months. The training was also agreed to, which I had previously recited, in which the S&C would have to inform EEOC the name of the trainers. EEOC would have the right to object to the name of the trainers, but the EEOC would not be providing the content for the training. The posting, it was eventually agreed, that the posting in the Chicago location human resources department is okay, because this is the place where S&C typically communicates with its employees regarding company matters. As to the last aspect, which was the issue of an employee seeking to return to work, after several bouts of going back and forth it was agreed upon that the S&C is required to inform the EEOC whenever an employee who seeks to return to work is not, in fact, returned to work, but instead, is terminated. If the employee registers a disagreement with S&C regarding that employee's ability to return to work, at that point, S&C's obligation is triggered to notify EEOC of that disagreement. In addition, S&C is required to maintain all records that the employee submits in support of his or her eligibility to return to work. Similarly, if S&C launches an investigation regarding that employee's claim to be able to return to work, those records must also be

---

[1] The parties had not been exchanging edited drafts of EEOC's proposed consent decree during the negotiating session, but relied upon the Court's representations as to what issues continued to need resolution

> retained by S&C. As I indicated, it is an 18-month consent decree, and based on that 18 months there will be two reporting periods, one at six months and one at 15 months. The manner in which the reports are generated is pretty flexible, typically done by way of an Excel spread sheet or can even be done by way of a letter.

Dkt. 192, Transcript of August 9, 2021 Hearing ("Dkt. 192, 8/9/21 Tr.") 12:25-14:7. Judge Valderrama went on to describe the terms between Rascher and SCE. Dkt. 192, 8/9/21 Tr. 14:8-15. In reciting terms, Judge Valderrama listed neither the scope of the injunction against discrimination nor the scope of the injunction against retaliation. *See* Dkt. 192, 8/9/21 Tr. 14:8-15. EEOC agreed that the terms listed by Judge Valderrama were the terms to which the parties agreed. Dkt. 192, 8/9/21 Tr. 14:21-15:6. Judge Valderrama then asked SCE whether it agreed with the terms stated. Defendant did not agree. Recognizing that the judge did not state anything about the scope of injunction, counsel for SCE requested the following additions to Judge Valderrama's recitation of terms:

> You accurately set forth the issue on when the record keeping and reporting would be triggered. Part of our discussion was that also needs to be reflected in what was Paragraph 4 of the consent decree, just the injunction language itself, that should be tailored to include the terminated piece that you described. That would be point number one. And then the second point is we had told you in our first discussion that we are not prepared for that injunction language in Section 5 that talks about retaliation or accommodations because of the nature of the case, it did not include those components. So our understanding is those are out.

Dkt. 192, 8/9/21 Tr. 15:11-24. The parties proceeded to talk about the scope of injunction against retaliation in paragraph 5 but did not address the injunction against discrimination in paragraph 4. The parties did not reach an agreement on injunctive relief, and the conference ended around 5:00 PM without a settlement.

3

After the settlement conference, SCE provided a proposed revision to the draft language EEOC had provided to paragraph 5 narrowing the scope of the injunction against retaliation. Exhibit A. After the parties exchanged drafts of the language, *id.*, the parties agreed on the text of paragraph 5.

Counsel for SCE Brandon Liss and Steve Brenneman then contacted Counsel for EEOC Miles Shultz. Exhibit B ¶ 10. They asked Shultz whether the parties could communicate to the Court that the parties had reached an agreement. *Id.* at ¶¶ 11-12. Shultz indicated that, although the parties reached an agreement on paragraph 5, and that SCE could tell the Court that the parties reached an agreement on paragraph 5, that Ethan Cohen, supervisory trial attorney for the EEOC with authority to settle on its behalf, would follow up with the parties with an email memorializing the terms to which the parties agreed to prevent any miscommunication prior to telling the Court that the parties agreed. *Id.* In preparing his email, Cohen reviewed contemporaneous notes prepared by Jane Jozefowicz, a paralegal for EEOC who had listened to the settlement conference, and realized that SCE might have an objection to paragraph 4 regarding the injunction against discrimination. Exhibit C ¶ 14. Before Cohen sent his email, SCE represented to the Court "that the parties have reached an agreement in principle to settle the case pursuant to the terms set forth by the Court at today's hearing, as well as a modified Paragraph 5 of the consent decree." Exhibit D. Although Shultz told SCE that EEOC would not object to SCE informing the Court about the agreement to paragraph 5, he did not authorize SCE to tell the Court there was an overall agreement as Cohen was

4

actively preparing an email to send to SCE. Ex. B ¶¶ 11-13. In response, Cohen emailed SCE, Rascher, and the Court asking whether, by sending the email, SCE no longer objected to the language in paragraph 4, or if they did, to inform the Court that the parties had not settled. Exhibit E, pg. 3-4. SCE stated that they did not agree to the language in paragraph 4. Ex. E, pg. 1. Cohen asked SCE to provide updated language to paragraph 4 if they wished to continue discussing settlement, and SCE did not respond. *Id.* Nor did SCE respond to Cohen's repeated inquiry about whether SCE disputed any of the other terms of the agreement as set forth in the proposed Consent Decree EEOC had sent to Defendant in September 2020. *See id.*

The following day, Judge Valderrama asked the parties whether they had reached a settlement. Both EEOC and SCE indicated that the case was not resolved. *See* Dkt. 193, Transcript of August 10, 2021 Hearing ("Dkt. 193, 8/10/21 Tr.") 5:24-6:5. SCE indicated it was prepared to "keep working . . . to address the issues that remain." *Id.* at 9:2-3.

SCE then filed its motion to enforce the settlement with a draft decree as an exhibit. Dkt. 188; 188-1. At no point prior to filing this motion had SCE provided counter-provisions to language proposed by EEOC other than its revision to paragraph 5, provided on August 9, 2021. The decree included revised language to paragraph 4, *Id.* The decree also includes a provision about training stating that "[d]uring each of the eighteen (18) months covered by this Decree, S&C's managers and all employees responsible for human resources and medical evaluations shall be trained" on their obligations under the ADA, *id.* at PageID#3088, and that SCE will

5

post a notice to its employees for two years, *id.* at PageID#3092. In their haste to claim the existence of an imaginary settlement, Defendant appears to insert terms it never would have agreed to during negotiations[2].

## Argument

SCE and EEOC have, at no time, entered into an enforceable settlement agreement because there was never a meeting of the minds on the scope of the injunction against discrimination, a fact SCE admitted in Court, nor had Defendant ever communicated to EEOC that it would accept the language of EEOC's proposed Consent Decree sent to Defendant in September 2020. SCE misrepresents the out of court and unrecorded phone call between Miles Shultz and Brandon Liss and Steve Brenneman that prompted Liss's email to the Court. Shultz's recollection, and the parties' subsequent emails, also demonstrate that there was no meeting of the minds on the terms of paragraph 4 and the wording of the Decree. Further, even if Shultz had believed that the parties had resolved all material terms and informed SCE's counsel during their phone call, which he did not, EEOC's trial attorney did not have authority to settle on behalf of EEOC, and the settlement would not be enforceable.

Even if the Court found that there had been a meeting of the minds on the material terms of the decree, and that an agreement had been reached, any such agreement would be unenforceable under the Statute of Frauds because it could not

---

[2] Although SCE likely did not intend to ask the court to enter the consent decree with the monthly training provision, in filing its motion, it has represented that the decree, including that provision, is the agreement that it accepts and that the court should enter. SCE has never said it would not accept 18 monthly trainings. Thus, should the Court enter the decree, EEOC would expect the decree to include the terms that SCE accepts in its exhibit A, including 18 monthly trainings of its entire staff and posting notice for two years.

be performed within one year. Because of all these issues, all of EEOC's actions were in good faith and SCE should not be given attorney's fees or venire costs.

Although EEOC and SCE do <u>not</u> have an enforceable settlement, Rascher and SCE may have an enforceable settlement for the complaint in intervention. The absence of a settlement between EEOC and SCE does not preclude a settlement between SCE and Rascher of Rascher's complaint in intervention, and such a settlement does not affect EEOC's ability to seek relief independently through the court. EEOC has no objection to this settlement.

### I.     There has never been a settlement between EEOC and SCE

At no point during or after the hearing did the parties reach a meeting of the minds on the scope of the injunction against disability embodied in paragraph 4. The parties, at most, agreed to the terms the Court set out at the hearing, which did not include a change to the scope of the injunction against disability discrimination, and the language in paragraph 5 determined after the status conference ended. SCE's argument that the parties settled the case at the 7:57 p.m. phone call with Shultz is mistaken because 1) Shultz did not state they had a settlement on all material terms and did not authorize Defendant to make such a representation to the Court and 2) Shultz did not have the necessary authority to enter into a settlement. Defendant mischaracterizes a rushed and disjointed out of court negotiation where the terms that SCE would have the Court impose were never set out as SCE describes and were never agreed to by EEOC. Further, any attempt at arguing there is an oral agreement is unenforceable under the Statute of Frauds.

7

### a. EEOC and SCE did not agree on terms for paragraph 4

First, there was no agreement on a full settlement at any point. "Settlement agreements are contracts and are interpreted according to the law of the jurisdiction in which the contract was allegedly created—here, Illinois." *Bradbury v. Morris Hosp.*, No. 18 C 3227, 2019 WL 2387577, at *2 (N.D. Ill. Feb. 26, 2019). Therefore, with a settlement agreement, it must follow a contract with "an offer to settle, an acceptance of the offer, and a meeting of the minds." *Id.* "The material terms of the settlement agreement must be '*definite and certain*,' so the Court can determine when a breach occurs." *Id.* (emphasis added).

Here, there was no meeting of the minds and proposed terms were far from definite and certain. Before the email Cohen sent at 9:02 p.m., there was no agreement made during the settlement conference with the Court. Statements by the Court were the only memorialization of the discussions and they did not mention narrowing the scope of the injunction against disability or retaliation, *see* Dkt. 192, 8/9/21 Tr. 12:25-14:7, and occurred during a time when Cohen, the EEOC's only participant with authority at the settlement conference, was attempting to enter the courthouse and pass through security for a COVID test, *see* Ex. C ¶ 4; Dkt. 192, 8/9/21 Tr. 11:22-12:5. SCE made statements at that time that there was still disagreement over paragraph 4, and there was no discussion or agreement on the terms of paragraph 4. Dkt. 192, 8/9/21 Tr. at 15:11-18. At the end of the status hearing, the judge states his understanding that that there is no agreement because EEOC was unwilling to accept "the revised paragraph 5." Dkt. 192, 8/9/21 Tr. 35:15-20. There

8

is no confirmation from the EEOC or SCE that paragraph 5 was the only remaining issue. The EEOC indicated that it was willing to continue discussions, *Id.* at 35:5-14, but stated unequivocally that settlement had not been reached. *Id.* at 37:39-22. It was not until Cohen reviewed notes from the call that he was able to infer that Defendant may have objected to paragraph 4, and presumably continued to object. Ex. C ¶ 14. There is no evidence that there has been a certain or definite meeting of the minds on paragraph 4 through any of this language. Due to the issues with paragraph 4 to date, there is no doubt this was a material term that was not definite and certain at the time of the alleged settlement. *See e.g.*, Ex. D-E.

In addition, the phone call at 7:57 p.m. did not happen as Defendant claims. Shultz stated on that phone call that there had been an agreement on the revised paragraph 5, but that Cohen was sending an email memorializing EEOC's understanding of all the terms of the proposed resolution to determine whether there was in fact agreement on all material terms. *See* Ex. B at ¶ 11. Shultz indicated that this was important due to miscommunications in the past. *Id.* This was also important because, during the settlement conference, Cohen was at the courthouse for COVID testing, and Shultz was only present during portions of the settlement conference, was not as well versed in what had been discussed during the breakout sessions and was aware only of what the Court recited at the end of the day. *Id.* at ¶¶ 2-4. When asked about communicating our position at that moment, Shultz only agreed to informing the Court of the agreement to the language in paragraph 5 *because* Cohen was writing a full email on the proposed terms make sure both parties

9

were on the same page. *Id.* at ¶ 11. An email that was being drafted as SCE sent its email to the Court. Overall, there was never a meeting of the minds on the scope of the injunction embodied in paragraph 4, and thus there is no enforceable settlement.

The cases that SCE cites in support of its motion are inapposite because unlike SCE's case, either (1) the movant sought to enforce a settlement agreement that was fully executed, *see E.E.O.C. v. Regal-Beloit Corp., 06-C-568-S, 2007 WL 5614093*, at *2 (W.D. Wis. May 1, 2007); *Holmes v. Godinez*, 991 F.3d 775, 779 (7th Cir. 2021); (2) there was a signed agreement on material terms, *see Ortiz-Quinones v. Cook County, Illinois*, 744 Fed. Appx. 962, 963 (7th Cir. 2018); the parties agreed on all of the material terms before the magistrate judge at a settlement conference, *see Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002); or the disputes that remained regarded only non-material terms, *Dillard v. Starcon Intern., Inc.,* 483 F.3d 502, 506 (7th Cir. 2007). None of those circumstances describe this case. There was never a signed consent decree, a signed agreement on material terms, a statement in court that the parties agreed on the material terms, and the disputes over the scope of the injunction are material terms of any settlement.

Defendant points to no evidence that EEOC agreed to any changes in paragraph 4. *See* Hearing Transcript at 15:11-37:25. Overall, there was no meeting of the minds and no settlement reached by the EEOC with S&C Counsel.

### b. SCE may not rely on the alleged representation of an EEOC trial attorney who did not have authority to settle on behalf of EEOC

In addition to the lack of agreement on paragraph 4, Shultz did not have the authority to enter into a settlement on that phone call. He informed Defendant's

10

counsel of this by stating that Cohen was sending an email to confirm whether there was an agreement on all material items. Ex. B at ¶ 11. "An attorney's authority to settle a lawsuit is entirely separate from his authority to represent a client in litigation[.]" *Magallanes v. Ill. Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008). "An attorney's authority to agree to an out-of-court settlement will not be presumed, and the burden of proof rests on the party alleging authority to show that fact." *Id.*; *Higbee v. Sentry Ins. Co.,* 253 F.3d 994, 999 (7th Cir. 2001). In fact, if it is an out of court settlement, "opposing counsel is put on notice to ascertain the attorney's authority. If opposing counsel fails to make inquiry or to demand proof of the attorney's authority, opposing counsel deals with the attorney at his or her peril." *Johnson v. Dart*, No. 09 C 6940, 2011 WL 3157298, at *3 (N.D. Ill. July 26, 2011). Here, not only did Shultz not accept settlement, he could not have accepted settlement on behalf of EEOC. In his telephone conversations, he noted that he was waiting on Cohen's email to make sure no mistakes were made in the proposed settlement and did not approve an agreement on al terms. *See* Ex. B at ¶ 11-13.

Defendant makes a conclusory argument that because paragraph 5 was the only issue they raised outside of Court that EEOC agreed to removing paragraph 4. There is no evidence of this[3]. At no time during the on-the-record hearing did EEOC

---

[3] In fact, in contrast to SCE's argument that the court should enforce the decree based on the email Liss sent to the court representing an agreement, Liss's email states "We are writing to inform the Court that the parties have reached an agreement in principle to settle the case **pursuant to the terms set forth by the Court at today's hearing, as well as a modified Paragraph 5 of the consent decree.**" (emphasis added). The terms set forth by the Court did not include any change to the scope of the injunction against discrimination under paragraph 4. *See* Dkt. 192, 8/9/21 Tr. 12:25-14:7. Thus, if Liss's email supports enforcing the supposed settlement, it does so under the original draft of paragraph 4 without the narrower injunction against discrimination.

11

agree to any revision to paragraph 4, and Defendant does not claim to have discussed paragraph 4 with EEOC any further that evening. Overall, SCE has shown no evidence the parties agreed, and Schultz did not have the authority to settle.

### c. Any oral settlement would be unenforceable under the Statute of Frauds

Under Illinois law an oral agreement to settle a case is unenforceable if it would violate the state Statute of Frauds. *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). Under the Statute of Frauds, "[n]o action shall be brought . . . upon any agreement that is not to be performed within the space of one year . . . unless the promise or agreement . . . shall be in writing, and signed[.]" 740 Ill. Comp. Stat. 80/1; *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 02 C 4704, 2006 WL 695699, at *11 (N.D. Ill. Mar. 16, 2006) (holding that an oral settlement agreement with a covenant not to sue that extended beyond one year was unenforceable under the Illinois Statute of Frauds). In *Richard Knorr Intern., Ltd. v. Geostar, Inc.*, 08 C 5414, 2010 WL 3419504, at *3 (N.D. Ill. Aug. 25, 2010), the court found that an oral settlement agreement was unenforceable, in part, because the parties agreed to a payment plan that extended beyond one year. *Id*. The court held that, "[b]y its terms, this payment schedule cannot be performed within the space of one year; it is therefore governed by § 80/1 of the Frauds Act."

Similarly, both EEOC and SCE agreed that the term of the consent decree would be 18 months. The decree, by its terms, could not be performed within the space

of one year, and thus would require a written, signed agreement to be enforceable[4]. No such writing exists, and thus, even if the parties had reached a meeting of the minds, the decree would be unenforceable. On that basis, SCE's motion to enforce should be rejected.

## II. An enforceable settlement may exist between SCE and Rascher

Plaintiff-Intervenor argues in its Motion to Enforce Settlement that it reached an agreement with SCE on monetary relief. Dkt. 185. This may have created a settlement that the Court may enforce between SCE and Rascher, despite the fact that there was never a settlement between EEOC and SCE.

Although EEOC and SCE never reached a settlement, Rascher and SCE agreed to resolve the complaint in intervention for $315,000. Dkt. 192, 8/9/21 Tr., 12:7-24. Further, although SCE objected to Judge Valderrama's recitation of terms on the basis of a dispute over paragraphs 4 and 5 related to injunctive relief, it did not object to the terms on the basis of monetary relief. *See Id.* at 15:11-24. The transcript contains no statements that SCE would not agree to settle with Rascher without an agreement with EEOC. Further, during the hearing on August 10, 2021,

---

[4] Although an oral settlement agreement made during a court ordered settlement conference is exempt from the statute of frauds, *See Locasto v. Locasto*, 518 F. Supp. 2d 1025, 1030 (N.D. Ill. 2007), in this case, there was no agreement during the settlement conference. SCE acknowledges as much when it argues that the agreement on the terms of settlement occurred in the evening of August 9, 2021. *See* Dkt. 188, PageID#3077. Any agreement, if it occurred as SCE relates, occurred at least in part outside of court; at no point did any party say that they had reached an agreement during the settlement conference or the hearing on August 10, 2021. Further, courts will not "enforce a partial bargain that one side or the other would have rejected as incomplete." *PFT Roberson, Inc. v. Volvo Trucks N.A., Inc.*, 420 F.3d 728, 731 (7th Cir. 2005). "Parties may negotiate toward closing a deal without the risk that a jury will think that some intermediate document is a contract, and without the fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics." *Id* (cleaned up).

13

counsel for Rascher stated that she had a settlement with SCE, Dkt. 193 8/10/21 Tr. 7:15-18, and SCE's counsel did not dispute the "sentiment on the settlement," Dkt. 193. 8/10/21 Tr. 8:17-18.

Additionally, there is no legal requirement that SCE's settlement with Rascher is, or should be, contingent on a global settlement between SCE and both plaintiffs, and a settlement of the complaint in intervention would in no way limit EEOC's ability to continue its suit against SCE. A complaint brought by a plaintiff-intervenor is independent of claims brought by EEOC, even if those claims relate to the same charging party, because EEOC's has independent authority to file lawsuits and its power to do so is not merely derivative of the claims of the charging party. *See E.E.O.C. v. Union P. R.R. Co.*, 867 F.3d 843, 851-852 (7th Cir. 2017); *E.E.O.C. v. Waffle H., Inc.*, 534 U.S. 279, 291 (2002) ("The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake . . . if the agency makes that determination, the statutory text unambiguously authorizes it to proceed in a judicial forum")[5]. Thus, because "EEOC stands not just in the shoes of the individual, but as an enforcement

---

[5] It has long been held that the EEOC has its own role in bringing cases under its statutory authority, that its interests are distinct from and not co-extensive with a charging party's. *See E.E.O.C. v. Union P. R.R. Co.*, 867 F.3d 843, 851 (7th Cir. 2017) (holding that preventing the EEOC from continuing an investigation after the disposition of the charging party's case "would not only undercut the EEOC's role as the master of its case under Title VII, it would render the EEOC's authority as 'merely derivative' of that of the charging individual contrary to the Supreme Court's holding[.]"); *Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 331 (1980) ("[T]he EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason."); *In re Bemis Co.*, Inc., 279 F.3d 419, 421 (7th Cir. 2002) ("The EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation[.]"); *E.E.O.C. v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597 (7th Cir. 2009) (noting that "the agency's powers are independent of any resolution between employer and employee").

14

vehicle for the public interest . . . [s]eparate, private agreements to which the EEOC is not a party do not necessarily vitiate the EEOC's authority to proceed in furtherance of the public interest." *E.E.O.C. v. Contl. Airlines Inc.*, 04 C 3055, 2006 WL 3505485, at *1 (N.D. Ill. Dec. 4, 2006). Whether the Court enforces a settlement of the complaint in intervention between SCE and Rascher would not determine the ultimate outcome of EEOC's suit.

### III. The EEOC's Actions Were in Good Faith

SCE's Counsel asks for the EEOC to be responsible for attorney's fees and venire costs. As shown through its arguments, the EEOC acted in good faith when it asked SCE about the terms of the settlement. The parties did not agree on the material terms; EEOC did not refuse to abide by the terms of any settlement because there was no settlement. SCE cannot point to any bad faith actions directed at them. In fact, SCE's email to the Court representing that the parties had settled was sent without permission to inform the Court of an overall settlement. Thus, any responsibility on the failure to settle is on SCE and therefore they should not be awarded attorneys' fees or venire costs.

### CONCLUSION

For the foregoing reasons, EEOC respectfully requests this Court deny Defendant's Motion to Enforce Settlement Agreement and Enter a Consent Decree. Dkt. 188.

Dated: August 20, 2021                            Respectfully submitted,

s/ Jonathan Delozano
Jonathan Delozano
Trial Attorney
U.S. Equal Employment
Opportunity Commission
230 S. Dearborn St., Suite 2920
Chicago, Illinois 60604
Jonathan.Delozano@EEOC.Gov
